IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WELLS FARGO BANK, N.A., successor by merger to Wachovia Bank, National Association, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 2:11-cv-1014-TFM ) [wo] |
| READY-BUILT TRANSMISSIONS, INC., READY BUILT DISTRIBUTORS, INC., ROBERT L. JONES, SR., and ROBERT L. JONES, JR., | ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff's *Motion for Summary Judgment* (Doc. 25, filed August 6, 2012). After careful scrutiny of the record and briefs, for reasons herein explained, the Court finds that the motion is due to be granted.

## I. JURISDICTION

The district court has diversity jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

## II. BACKGROUND

Wells Fargo Bank, N.A., successor by merger to Wachovia Bank, National Association ("Plaintiff" or "Wells Fargo") is a national banking association having its principal place of business and main office in Minnehaha County, South Dakota. *See* Doc. 1 at 2. On November 29, 2011, Wells Fargo initiated this action by filing a Complaint against Ready-Built Transmissions, Inc. ("RBT"), Ready-Built Distributors, Inc. ("RBD"), Robert L. Jones, Sr. ("Jones, Sr.") (collectively "Defendants").[1] *See* Doc. 1 at 1.

Through a Loan Restructuring Agreement and Note that took place on October 13, 2009, RBT and RBD became jointly and severally indebted to Wells Fargo in the principal amount of $800,000.00. *See* Doc. 1 at 3; Doc 1-1 at 25; Doc 1-2 at 1. Jones, Sr. and Robert L. Jones, Jr. ("Jones, Jr.") entered into a Limited Guaranty Agreement with Wells Fargo on the same day, which they "jointly and severally guaranteed the due and punctual payment to Wells Fargo of all principal, interest, late fees, costs, expenses of collection, and other amounts due" under the Loan Restructuring Agreement and Note, subject to the Maximum Guaranteed Amount. *See* Doc. 1 at 3; Doc 1-3 at 1-2.

On August 6, 2012, Wells Fargo submitted its *Motion for Summary Judgment* pursuant to FED. R. CIV. P. 56 along with a brief in support and evidentiary submissions. *See* Docs. 25-27. Wells Fargo asserts that summary judgment is due to be granted in their favor because "the undisputed facts establish that defendants RBT and RBD are, jointly and

---

[1] Although Jones, Jr. Is a named defendant in this case, the Court reserves judgment as to Jones, Jr. due to the automatic stay provision of 11 U.S.C. § 362(a).

severally, indebted to Wells Fargo for the principal sum of $796,500.00, plus accrued and accruing interest thereon, a loan restructuring fee in the amount of $10,000.00, and costs of collection, including attorneys' fees and expenses." *See* Doc. 25 at 2. Wells Fargo additionally asserts that "the undisputed facts establish that defendants Jones Sr. and Jones Jr. are, jointly and severally, indebted to Wells Fargo for fifty percent of the principal sum [. . .], in the amount of $398,250.00, plus all accrued interest due under the note, the above-described $10,000.00 loan restructuring fee, and Wells Fargo's costs of collection, including attorneys' fees and expenses." *Id.*

In 2010, Defendants defaulted under the Loan Restructuring Agreement and Note by "failing to make payments as and when due under the terms" and as a consequence Wells Fargo accelerated the maturity of the note. *See* Doc. 1 at 4. Defendants submitted a request that Wells Fargo forbear from exercising its remedies, and Wells Fargo granted the forbearance request. *Id.* Wells Fargo and Defendants entered into a Forbearance and Loan Modification Agreement on August 10, 2010. *Id.*; *See* Doc. 1-4 at 1-11. The forbearance period expired on April 13, 2011, and all indebtedness of Defendants to Wells Fargo became immediately due and payable in full. *See* Doc. 1 at 5. Wells Fargo made a demand on Defendants, jointly and severally, for payment in full; however, Defendants "failed and refused" to pay the indebtedness. *See* Doc. 1 at 6.

On August 30, 2012, Defendants filed their *Response to Motion for Summary Judgment* (Doc. 30) in which they stipulate that they are jointly and severally indebted to Wells Fargo for a restructured loan under a Loan Restructuring Agreement and Note, both

dated October 13, 2009. *See* Doc. 30 at 1. Defendants also concede that upon the expiration of the forbearance period, the indebtedness was not paid in full. *See* Doc. 30 at 2. Defendants aver that summary judgment should not be granted because they dispute the "basis and amount of damages claimed in the Plaintiff's complaint, the Plaintiff's brief on summary judgment, and the Plaintiff's Rule 26(a) disclosures," and because they need adequate opportunity for discovery. *See* Doc. 30 at 5.

The motion has been fully briefed and is ripe for this Court's review.

### III.  SUMMARY JUDGMENT STANDARD

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a)-(b). Summary judgment is appropriate when the moving party establishes that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a);[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct 2548, 2552-53, 91 L.Ed.2d 265 (1986); *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1231-32 (11th Cir. 2011). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Ritchey v. S. Nuclear Operating Co., Inc.*, 2011 WL 1490358

---

[2] Effective December 1, 2010 Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." FED. R. CIV. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word-genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. The Advisory Committee was careful to note that the changes "will not affect the continuing development of the decisional law construing and applying these phrases." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule. *Id*.

(11th Cir. 2011) (unpublished opinion quoting *Anderson*). At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. Only disputes about the material facts will preclude the granting of summary judgment. *Id.*

The movant bears the initial burden of proof. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty Cnty., Ga.*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Rule 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Moore*, 637 F.3d at 1232 (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510). The court must view the facts

and draw all reasonable inference in favor of the nonmoving party. *Id.* (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1265 (11th Cir. 2007) ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356 (citations omitted). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lejaun v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted) (emphasis in original). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2510-11 (citations omitted). In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

### IV. Discussion and Analysis of Plaintiff's Claims

On October 23, 2012, the Court held a status and scheduling conference to discuss the effect, if any, the closing of discovery on October 22, 2012 has on the issues raised in the *Motion for Summary Judgment* (Doc. 25). *See* Doc. 35. Although Defendants had

previously disputed the "basis and amount of damages claimed" and requested more time to conduct discovery, representations made by Defendants' counsel after the discovery deadline had passed are that they have "no legal or factual defense" to the assertions laid out in the Motion for Summary Judgment. However, Defendants still do not "consent or stipulate" to the allegations in the Complaint or the Motion for Summary Judgment.

During the status and scheduling conference, the damages requested were determined as follows: (1) principal of the loan is $796,500.00; (2) restructuring fee is $10,000.00; (3) interest accrued to date is $65,268.75;[3] and (4) attorney's fees and expenses are $36,115.61. Defendants admit that there is no genuine issue of material fact with "with respect to their obligation on the Loan Restructuring Agreement and Restructured Note." *See* Doc. 30 at 7; Doc. 40 at 3. Since there is no genuine issue of material fact with regards to the Defendants' obligations under the Loan Restructuring Agreement and Note, this Court finds that Wells Fargo's *Motion for Summary Judgment* should be granted with respect to the principal, restructuring fee, and the interest accrued.

All that leaves the Court to determine is the dispute over attorney's fees and costs. Wells Fargo lists their attorneys' fees and costs as $36,115.61.[4] Defendants' claim that under a factually similar case, the court limited the plaintiff to $10,000 in attorneys' fees where the plaintiff failed to explain its fee request in terms of the twelve *Johnson* factors. *See* Doc. 30

---

[3] The interest was calculated on October 23, 2012, meaning that interest has accrued for fifty-eight (58) more days at a rate of $110.625 per diem rate.

[4] For work done between January 2010 and November 2012, Wells Fargo billed $34,661.50 in attorneys fees and $1,530.63 in expenses; but have written off the sum of $76.52. *See* Doc. 40 at 3.

at 7; citing *Wells Fargo Bank, Nat. Ass'n v. S. Boys Inv. Group, LLC*, 3:10-CV-609-J-37MCR, 2011 WL 2446594 (M.D. Fla. May 26, 2011), *report and recommendation adopted sub nom by* 3:10-CV-609-J-37MCR, 2011 WL 2436062 (M.D. Fla. June 15, 2011). The twelve *Johnson* factors are: (1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or the circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The "undesirability" of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The court in *Wells Fargo Bank* reached its decision to limit attorney fees because the plaintiffs in that case submitted deficient affidavits after multiple court orders. *Wells Fargo Bank*, 2011 WL 2446594 at *4. Finally, the court held that due to the plaintiff's failure to adequately respond to the court's order to "identify the names and titles of the individuals who rendered service to Plaintiff in connection with this litigation, [including] information regarding their respective skill and experience levels"and their failure to make any showing regarding any of the *Johnson* factors, the court had to use its own judgment to determine the fees. *Id.*

> On November 28, 2012, this Court ordered Wells Fargo to:
>
> file supplemental information, from which the Court could make a determination of reasonableness of the attorney's fees and costs. This should

>be a thorough itemization of all costs incurred and each attorneys' billable hours, including description of the work performed.  The filing should include information pertaining to the attorneys' skill and experience level, so that the Court can determine the reasonableness of the rates charged.

*See* Doc. 38 at 1.

On December 10, 2012, Wells Fargo complied with the Court's order and filed a supplemental affidavit.  *See* Doc. 40.  Contained within Wells Fargo's thorough 82-page submission was an affidavit with an in depth background of each of the four attorneys that have assisted with the case at bar, as well as information on both paralegals who have provided assistance.  *See* Doc. 40 at 1-8.  Additionally, Wells Fargo included all billable invoices between January 4, 2010 through October 31, 2012.[5]  *See* Doc. 40 at 10-82  The invoices show all billable hours that were billed in .10 increments, the initials of the legal professional who completed the task, a description of exactly what was done, and what day the task was performed.  *Id.*  Wells Fargo's submission is very thorough and is responsive to the Court's order.  As a result, the Court does not find that the *Wells Fargo Bank* holding applies here.  *Wells Fargo Bank*, 2011 WL 2446594 at *4.  On December 19, 2012, the Court held a status conference  to determine what both parties believed to be reasonable attorney fees in this case.  *See* Doc 43.  Based on representations made by counsel for both parties, they opted to allow the undersigned to make the reasonableness determination.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."

---

[5] In fact, transactions involving this dispute date back to 2008; however, Wells Fargo does not seek reimbursement for those fees.  *See* Doc. 40 at 3.

*Simpleville Music v. Mizell*, 511 F. Supp. 2d 1158, 1162 (M.D. Ala. 2007) (citing *Norman v. Housing Authority of the City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988)). Wells Fargo seeks the following hourly rates:

```
Jay R. Bender (Partner)......................................................................... $360-400.00
Jennifer H. Henderson (Senior Associate).......................................... $215-265.00
James Bailey (Associate)....................................................................... $195.00
T. Parker Griffin, Jr. (Associate)........................................................... $200.00
Kimberly A. Kirsch (Paralegal)............................................................ $160.00
Jenny G. Pair (Paralegal)...................................................................... $155.00
```

*See* Doc. 40 at 10-82.  The court has considered Wells Fargo's affidavit demonstrating the experience, reputation and ability of the attorneys involved in this case, but the Court must also "be guided by the prevailing market rate, which, in this case, is that of Montgomery, Alabama."  *Simpleville Music*, 511 F. Supp. 2d at 1163; *see Black v. M.G.A., Inc.*, 51 F.Supp.2d 1315, 1320-21 (M.D.Ala. 1999) ("'The rate of attorney's fees is that of the place where the case is filed.'") (quoting *Cullens v. Georgia Dep't of Transp.,* 29 F.3d 1489, 1494 (11th Cir. 1994)).  Plaintiff's counsel in *Simpleville Music* submitted the affidavit of Attorney Robert D. Segall that presented the 2007 rates:

> the customary range of hourly rates for lawyers of [Gewin's] skill and experience range between $ 300 and $ 375. Litigators in Montgomery with approximately 10 years' experience customarily charge hourly rates between $ 200 and $ 250 for complex business litigation. Litigators in Montgomery with 1-2 years of experience customarily charge hourly rates between $ 160 and $ 185 for complex business litigation.

*Simpleville Music*, 511 F. Supp. 2d at 1163.  Here, we are also dealing with complex business litigation and the rates billed are not too far out of line with those listed in Segall's affidavit and what the Court knows the current rates to be.  Although the rates billed by Bradley,

Arant, Boult, Cummings, LLP may be their usual billable rates as evidenced by the fact that Wells Fargo has already paid them at those rates, the court will limit their rates to what is reasonable in the Montgomery market. *See* Doc. 40 at 3.

Wells Fargo's filing indicates that James Bailey has two years of experience, and is billing at a rate of $195.00. Similarly, Wells Fargo lists two experienced paralegals, Kimberly A. Kirsch, and Jenny G. Pair, billing at rates of $160.00 and $155.00 respectively. The Court finds these rates to be out of line with the rates traditionally billed in the Montgomery market. Consequently, the Court finds that the appropriate rate is $160.00 per hour for Bailey, and $100.00 per hour for Kirsch and Pair.[6][7]

Regarding the billable rates of Jay R. Bender, Jennifer H. Henderson, and T. Parker Griffin, Jr., the Court finds those to be in line with both the Montgomery market, and the *Johnson* factors. Bender and Henderson are both very experienced and skilled in the highly specialized department of Bankruptcy, Restructuring, and Distressed Investing Practice Group. Bender only billed minimal hours, while Henderson did majority of the work on the case at bar. The interactions between Wells Fargo and Ready Built on this matter date back to 2008, yet Wells Fargo is not seeking reimbursement for any work done on this case prior

---

[6] The reduction on the billable rate for the paralegals is also in line with the reduction done in *Simpleville Music*, where the paralegals billed at $155 and $140, but were reduced to $100. 511 F. Supp. 2d at 1164.

[7] Kirsch worked 12.9 hours on this case, Pair worked 1.5 hours on this case, and Bailey worked .5 hours on his case. The total fee reduction pursuant to this Court's determination amounts to $874.00.

to January 2010.[8]  Similarly, the Court does not find the 139.4 total hours billed nor the $1,530.63 billed in expenses to be unreasonable for work spanning nearly two years.  "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates" and Wells Fargo has clearly done so.  *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983)).

## V.  CONCLUSION

Accordingly, it is ORDERED that

(1)  Plaintiff's *Motion for Summary Judgment* (Doc. 25) be and is hereby **GRANTED**.[9]

(2)  Defendants are liable to the Plaintiff for (a) the principal of the loan: $796,500.00; (b) the restructuring fee: $10,000.00; (c) the interest accrued to date: $71,685.00; and (d) the attorney's fees and expenses: $35,241.61.

Done this the 21st day of December, 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE

---

[8] The plaintiff in *Simpleville Music* similarly did not seek reimbursement for a portion of the fees that this Court found would have greatly increased the number of hours expended on the case.  511 F. Supp. 2d at 1164.

[9] Judgement is reserved as to Jones, Jr. due to the automatic stay provision of 11 U.S.C. § 362(a).